# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

MELBA J. TRUMBO, )
)
    Plaintiff-Below/Appellant, )
)
           v. )        C.A. No. CPU4-14-001632
)
LST INVESTMENTS and )
AAMCO INT'L CUST. SERV., )
)
    Defendants-Below/Appellees. )
)

Jeffrey M. Boyer, Esquire
Jeffrey M. Boyer LLC
42 Reads Way
New Castle, DE 19720
*Attorney for Plaintiff*

William J. Rhodunda, Jr., Esquire
Rhodunda & Williams LLC
1220 N. Market Street, Suite 700
Wilmington, DE 19801
*Attorney for Defendants*

## DECISION AFTER TRIAL

**RENNIE, J.**

## INTRODUCTION

This action comes to this Court on appeal from a Justice of the Peace decision dismissing without prejudice Melba J. Trumbo's (hereinafter "Trumbo") claim against LST Investments and AAMCO (hereinafter "Defendants" or "AAMCO"). This claim arose from a dispute concerning auto repair work performed on Trumbo's 2002 Ford Explorer (the "Vehicle") by AAMCO located in Bear, Delaware. Trumbo filed an appeal with this Court on June 26, 2014. A trial was held on July 6, 2015, and the Court reserved decision. This is the Court's final Order and Opinion in connection with this matter.

## FACTUAL BACKGROUND[1]

Trumbo first took her Vehicle to AAMCO to be serviced on May 10, 2013, because it was not functioning properly.[2] During this visit, AAMCO technicians performed a multi-point inspection of the Vehicle, noticed a pinion seal leak in the rear differential (the "differential"),[3] and recommended that the differential be serviced.[4] During the inspection, AAMCO employees also discovered that the transmission was malfunctioning. AAMCO informed Trumbo of the transmission problem, recommended it be replaced, and obtained Trumbo's authorization to perform the service. Trumbo's AUL powertrain warranty (the "AUL warranty" or "AUL") paid a portion of the cost for the new transmission,[5] but Trumbo chose not to service the differential.[6]

---

[1] The joint exhibits admitted into evidence bates labeled LST001-LST0014 will be cited to as J. Ex LST1-J.Ex LST14.

[2] At that point the Vehicle's odometer reading was 148,312 miles.

[3] J. Ex LST4; As explained by Defendants' witness Joe Capaldi, a differential is a part of the rear axle of a vehicle that adjusts the relative speed at which the inside and outside wheels rotate while the vehicle negotiates a turn. Since the inside wheels follow a shorter arc than the outside wheels, they must rotate at a slower speed. Bearings inside the differential carry the weight of a vehicle.

[4] J. Ex LST5; Joe Capaldi explained that the "Recommendations" portion of the multi-point inspection sheet acts as a checklist of information that must be conveyed to a customer.

[5] J. Ex LST3; The warranty covered $3,773.76 of the total cost to replace the transmission, and Trumbo paid $1,938.88.

[6] It also remains unclear why Trumbo chose to not authorize any differential repairs, but it is clear that her warranty does not cover general maintenance items, i.e. oil changes, valve, and seal repairs. Capaldi testified that the pinion seal leak is considered general maintenance.

2

At trial, Joe Capaldi (hereinafter "Capaldi"), the general manager of the AAMCO, testified that a rear pinion seal leak could lead to a loss of fluid in the differential. According to Capaldi, this loss of fluid could result in "very rapid bearing failure."

On October 25, 2013, Trumbo returned to AAMCO because she was experiencing problems with the new transmission. Trumbo told AAMCO technicians that the Vehicle "slips[] [and] bangs into gear" and makes noise at times.[7] A multi-point inspection revealed a fault with the replacement transmission's shifting mechanism, and the previously-noted pinion seal leak.[8] During this visit, AAMCO replaced the transmission under warranty and Trumbo again declined to authorize any differential repairs.

Shortly after AAMCO replaced the Vehicle's transmission, Trumbo brought it back for another multi-point inspection because she again noticed that the Vehicle was making noise.[9] Trumbo told AAMCO staff that the Vehicle was "making a noise in gear when accelerating and while coasting."[10] On October 30, 2013, AAMCO technicians inspected the Vehicle and noticed "excessive play" in the differential, and that during operation, the differential emitted a "whine." At that time, the differential was still leaking fluid through the pinion seal. Capaldi testified that excessive play is indicative of worn out bearings, and that the whining noise occurs when those bearings grind against the differential housing. AAMCO technicians determined that the differential was likely causing the noises Trumbo observed and contacted AUL and Trumbo about the necessary repair work.

After speaking with an AAMCO technician, AUL requested that AAMCO inspect the differential by removing and disassembling it, because the differential components are obscured

---

[7] J. Ex LST6.
[8] *Id.*
[9] J. Ex LST8.
[10] *Id.*

3

by a differential housing. Capaldi testified that prior to performing any work on the Vehicle, he called Trumbo, informed her of the $575.65 "tear-down" fee (the "diagnostics fee"), and obtained her authorization for the disassembly.[11] Trumbo testified that AAMCO did not tell her about the diagnostics fee until after the technicians had inspected the differential. AAMCO technicians performed the inspection and discovered damage to the differential housing. Capaldi testified that he informed Trumbo that due to the nature of the damage it would be more economical to replace than to repair the differential. Capaldi further testified that he also discussed the total cost to replace the differential, and the extent that the AUL warranty would cover the expense.[12] As a result, Trumbo authorized AAMCO to perform the necessary repair work.

On November 7, 2013, when Trumbo returned to retrieve her Vehicle, she signed an itemized service description detailing the charges for the work performed on the Vehicle.[13] The next morning, Trumbo's grandson, believing the transmission was still malfunctioning, contacted AAMCO. AAMCO informed him that Capaldi would be in touch with Trumbo in order to schedule another inspection. Trumbo testified that in light of her multiple visits to AAMCO, she decided to take the Vehicle to a new location.

Early the following week, Trumbo drove the Vehicle to an AAMCO located in Claymont, Delaware ("Claymont AAMCO"). Trumbo testified that after Claymont AAMCO

---

[11] Although Defendants submitted J. Ex LST11, 12, and 13, which purport to document the various phone calls made to Trumbo during the October 30, 2013 visit, none of these exhibits, even if considered as one document, satisfies the requirements of section 4904A.

[12] According to Capaldi, before the warranty company contributes to the cost of any repair, a repair shop must provide an initial diagnosis, proof of customer authorization of the work to be performed, and allow the warranty company an opportunity to send out a third party inspector to assess the validity of the claim. Notably, Capaldi testified that the warranty company will not pay any claim without proof that the customer submitting the claim authorized the repair work.

[13] J. Ex LST8.

4

technicians determined that the transmission was malfunctioning they replaced the transmission and Trumbo experienced no further problems with her Vehicle.[14]

On February 21, 2014, Trumbo filed a debt action against Defendants in the Justice of the Peace Court to recover her payment of $2,267.13 for the allegedly unnecessary differential replacement. On June 12, 2014, the Justice of the Peace Court issued an order dismissing without prejudice Trumbo's claims against Defendants. Trumbo appealed the Justice of the Peace Court's decision to this Court.

## PARTIES' CONTENTIONS

In her Complaint on Appeal (hereinafter "Complaint"), Trumbo alleges that after bringing the Vehicle to AAMCO for service on October 30, 2013, Capaldi informed her that the differential was likely the cause of the Vehicle's malfunction. Trumbo asserts that Capaldi requested authorization to disassemble the differential in order to diagnose the problem, but did not inform her of the attendant diagnostics fee. Trumbo contends that after the inspection, she learned of the diagnostics fee, and felt she "had no choice" but to authorize the repair work. Trumbo claims that the differential work was unnecessary and not the cause of her Vehicle's problems. Trumbo asserts that only after Claymont AAMCO worked on the transmission did the problems cease.

Trumbo alleges that Defendants' acts constitute deceptive trade practices as proscribed by 6 *Del. C.* §§ 2513, 2525, 2532(a)(12), and 2533. Trumbo asserts that Defendants suppressed the material fact of the diagnostics fee, and the actual cause of her vehicle's problems for their own gain. Trumbo also contends that Defendants violated: (i) 6 *Del. C.* § 4903A(a), by refusing to release the Vehicle until Trumbo paid the diagnostics fee; (ii) section 4904A, by failing to

---

[14] It remains unclear exactly what work technicians performed on the transmission at Claymont AAMCO as there is scant evidence or testimony addressing this matter.

5

obtain a waiver from Trumbo or provide her with statutorily required information; (iii) section 4907A, by charging Trumbo for unauthorized repairs; and (iv) section 4908A, by failing to post statutorily compliant signs on the premises or provide Trumbo with a disclosure statement. Pursuant to 6 *Del. C.* § 4909A(c), Trumbo seeks double the consideration paid to AAMCO for the differential replacement, costs, and attorney's fees.

In their Answer, Defendants generally deny Trumbo's allegations and state that they complied with their contractual obligations to her. Defendants contend that the differential repair was necessary regardless of what condition the transmission may have been in at the time, and that Trumbo was informed of and authorized all of the work performed on the Vehicle. Defendants also assert various affirmative defenses which were abandoned at trial.[15]

## DISCUSSION

### A. Standard of Review

Appeals from matters presented to the Justice of the Peace Court are reviewed *de novo*.[16] In civil claims, the plaintiff bears the burden to prove each and every element of its claim by a preponderance of the evidence.[17] The side on which the greater weight of the evidence is found is the side on which the preponderance of the evidence exists.[18]

### B. Consumer Fraud

Chapter 25 of the Delaware Code ("Chapter 25") enumerates various prohibited trade practices.[19] The purpose of Chapter 25 is "to protect consumers . . . from unfair or deceptive merchandising practices in the conduct of any trade."[20] Trumbo's Chapter 25 claims require a

---

[15] Defendants assert the following affirmative defenses: failure to state a claim upon which relief can be granted, breach of contract, failure to state a claim for damages, and that the Amended Complaint violates the mirror image rule.

[16] 10 *Del. C.* § 9571(a).

[17] *Reynolds v. Reynolds,* 237 A.2d 708, 711 (Del. 1967).

[18] *Id.*

[19] 6 *Del. C.* §§ 2513, 2532, 2533.

[20] 6 *Del. C.* § 2512.

showing that Defendants either intentionally suppressed a material fact or engaged in conduct creating a likelihood of confusion.[21]

After considering the evidence adduced at trial, the Court finds that Trumbo failed to establish that Defendants acted in a manner likely to cause confusion, or intentionally suppressed a material fact. At trial, Trumbo did not present any evidence which indicates that the differential was not defective, or that Defendants endeavored to suppress this fact in order to complete the agreed-upon business transaction. Notably, Trumbo did not offer any expert or other testimony to show that the differential was not defective or in disrepair. In contrast, Capaldi, Defendants' sole witness, demonstrated a keen understanding of AAMCO's records keeping and standard operating procedures with respect to providing estimates for, and obtaining work authorization from customers. Capaldi satisfied the Court that at all times, Trumbo was kept aware of the Vehicle's condition, and that Capaldi and AAMCO did not have or exercise any motive for recommending the differential work, other than to return Trumbo's Vehicle to a functional state. Indeed, Capaldi demonstrated that Trumbo had, at the very least, been aware of a potentially catastrophic differential pinion seal leak for six months prior to the transaction in question. In light of the express purpose of Chapter 25 and the evidence available, the Court finds that Trumbo has not established a Chapter 25 violation.

### C. Auto Repair Fraud Prevention

The Court next addresses section 4904A, Trumbo's only viable Chapter 49A claim.[22] The purpose of Chapter 49A is to "safeguard the public against fraudulent auto repair practices.[23] Section 4904A(a) specifically requires that unless waived pursuant to subsection (b), an auto

---

[21] 6 *Del. C.* §§ 2513, 2532(a)(12), 2533(b), (c).
[22] Trumbo's evidence fails to satisfy the elements of any other alleged Chapter 49A violations. Trumbo failed to prove that AAMCO refused to release the Vehicle to her, charged her for unauthorized repairs, or failed to post a statutorily mandated sign or provide Trumbo with a disclosure statement.
[23] 6 *Del. C.* § 4901A.

repair facility, "shall, before beginning any auto repair work . . . give the customer a written statement," containing the estimated completion date, the estimated price, and the estimated surcharge for any services provided.[24] Subsection (b) permits oral, in lieu of written statements, if the oral statement conveys the estimated price and completion date, is given before beginning any repair work, and only if the person providing the oral statement makes "a [signed] written record" satisfying the requirements of subsection (a).[25] Pursuant to section 4909A(c), a violation of section 4904A calls for damages in the amount of double the consideration paid for the services provided.[26]

Due to the murkiness of the testimony and evidence addressing the alleged violations of section 4904A, the Court focuses its determination on: (1) whether Trumbo had adequate notice of the $575.65[27] diagnostics fee prior to her authorizing the differential disassembly; and (2) whether AAMCO created a 4904A compliant record of their notice to Trumbo.

The Court finds that with respect to the diagnostics fee, Trumbo has demonstrated that Defendants did not satisfy the requirements of section 4904A. Trumbo testified that she was given neither an oral or written statement describing the diagnostics fee before AAMCO technicians performed the diagnostics service to the Vehicle. In addition, Defendants failed to adequately rebut Trumbo's claims. Accordingly, pursuant to 6 *Del. C.* § 4909A(c), the Court awards Plaintiff double the consideration paid to AMMCO for the differential inspection, or $1,151.30.[28]

---

[24] 6 *Del. C.* § 4904A(a).
[25] 6 *Del. C.* § 4904A(b).
[26] 6 *Del. C.* § 4909A(c).
[27] In the Complaint, Plaintiff lists the diagnostics fee at $575.00, however J. Ex LST1 and 8, both list the diagnostics fee at $575.65. Therefore, the Court will calculate the damages using the trial exhibits' figure.
[28] This amount represents two times the consideration paid to Defendants for the differential inspection.

8

In light of Chapter 49A's purpose, the Court finds that Trumbo's alleged 4904A violations with respect to the differential replacement are without merit. Chapter 49A exists to protect the public against fraud. The record is devoid of any evidence that Defendants acted fraudulently. Trumbo failed to prove that the differential was functioning properly when she brought the Vehicle to AAMCO for service. Furthermore, this Court concludes that the weight of the evidence at trial shows that Trumbo, well aware of the differential's disrepair, authorized the repair work irrespective of what notice she had of the diagnostics fee.[29] Therefore, the Court finds that Defendants did not violate section 4904A in a manner consistent with it express purpose of protecting the public against fraud.

## CONCLUSION

For all the foregoing reasons, the Court finds in favor of Plaintiff only with respect to the diagnostic fee, and awards Plaintiff an amount of $1,151.30, plus costs, along with post-judgment interest calculated at the legal rate. The Court does not deem it appropriate to award Plaintiff attorney's fees in light of the facts of this case and section 4909A(c)'s permissive language with respect to attorney's fees.

**IT IS SO ORDERED** this 7th day of December 2015.

Sheldon K. Rennie,
Judge

---

[29] Defendants informed Trumbo on a least two occasions prior to her October 30, 2013 service appointment of a rear pinion seal leak in the differential and provided her with documentary evidence of the leak. Capaldi's informed and credible testimony at trial pointed to specific reasons why he knew the differential was malfunctioning. Further, Capaldi detailed how ignoring a pinion seal leak could lead to differential failure. Trumbo filed a claim for the differential replacement with AUL to any repair work being performed. AUL contributed $720.00 to the cost of replacing the differential, and Trumbo signed multiple documents that itemized the cost of work performed.